Elmer G. JONES, Plaintiff and Appellant,

v.

TRANSAMERICA INSURANCE COMPANY, a corporation, Defendant and Respondent.

No. 15809.

Supreme Court of Utah.

March 12, 1979.

D. John Mussleman, of Stott, Young & Wilson, Salt Lake City, for plaintiff and appellant.

Raymond M. Berry, of Snow, Christensen & Martineau, Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff appeals from a summary judgment denying him the right to recover benefits under a contract of "no-fault" insurance issued in conformance with the Utah Automobile No-Fault Insurance Act,[1] (hereinafter "Act").

On February 13, 1974, plaintiff was involved in an automobile accident in Kane County, Utah, while on a sales trip to California. He experienced little pain at the time of the accident and continued on his sales trip. It was not until he returned home to Orem, Utah, on February 21, 1974, that he consulted one Dr. Jacobs, an orthopedic surgeon. He then absented himself from his employment until March 10, 1974, when he returned to work and has worked continuously since that time. Shortly after the accident, plaintiff applied for various no-fault benefits under his insurance policy. Defendant insurer paid the charges of Dr. Jacobs, and other medical expenses totalling $365.63. Defendant also paid plaintiff $567.89 in disability benefits for the period of February 21 through March 9, 1974. On September 5, 1975 (approximately 18 months later), plaintiff presented an additional claim to defendant for $2,485.36 representing lost earnings from a reduction in earning capacity based on a claim that he was partially disabled (25 percent) for a period of 47 weeks following the injury. Shortly thereafter, plaintiff claimed an additional $4,380.00 for inability to perform household services, the maximum allowable under the Act. At the same time as these further claims for disability were made upon defendant, plaintiff also entered into settlement negotiations with his tortfeasors. Defendant refused to pay these subsequent claims; however, plaintiff entered into a settlement agreement with his tortfeasors on January 3, 1976. For the consideration of $6,000.00, plaintiff released his tortfeasors of any and all claims he may have had against them for *personal injury* as well as property damage.

On August 3, 1977, plaintiff filed a complaint against defendant for having refused to pay the later disability claims, asserting that he had a legal right to compensation for loss of gross income and reimbursement for his inability to perform household services.[2] He sought punitive damages for defendant's failure to pay.

After both parties moved for summary judgment, the trial court ruled as follows:

1. U.C.A., 1953, 31–41–1 et seq.

2. U.C.A., 1953, 31–41–6(1)(b).

It is the opinion of this Court that the intent of the No-Fault Act was to provide benefits to those sustaining less serious injuries in automobile accidents, but to allow those sustaining more serious injuries the right to proceed against the party at fault without limitation as to amounts recoverable, but that the person would not be entitled to both recovery under the No-Fault Act and a suit against and recovery from the tort feasor.

■ On appeal, the parties choose not to squarely address the basis of the trial court's decision but focus instead on peripherally related matters. Basically the court's ruling is correct. The whole tenor of the Act is that an injured person will not be permitted to recover from an insurance carrier (over and above what the carrier has *previously* paid in benefits) once he has successfully recovered from his tortfeasor for *personal injuries*. Any other interpretation would be to permit double damage recovery.

■ The Act mandates[3] that every resident owner of a registered motor vehicle maintain either insurance or other approved security thereon.[4] It is designed to totally eliminate claims for injuries[5] of lesser consequence which fail to meet a basic "threshold" test set forth in the statute[6] and provides for the payment of benefits by one's own insurer without regard to fault.[7]

No-fault benefits are also available to those who sustain greater injuries. This is so even though they remain free to pursue a tort claim as well.[8] However, this does not entitle one to a double recovery for a single loss since the statute specifically affords subrogation rights and arbitration between insurers whenever no-fault benefits are paid.[9]

A fortiori, the legislative intent specifically expressed in the Act itself to "possibly stabilize, if not effectuate certain savings in, the rising costs of automobile accident insurance and to effectuate a more efficient, equitable method of handling the greater bulk of the personal injury claims that arise out of automobile accidents"[10] negatives the contention that double recovery is permitted. Double recovery for a single item of loss was never contemplated by the legislature[11] and we will not permit any type of automatic reward or "windfall" to an injured plaintiff.[12]

Specific points raised on appeal concern the validity of the disability claims plaintiff made upon defendant in 1975. Plaintiff argues that by wrongfully refusing to pay the benefits sought, defendant had tortiously breached the insurance contract, thereby giving rise to a claim for punitive damages. Defendant counters with two main arguments: 1) that the refusal to pay the disability benefits was justified in that plaintiff was not "disabled"; and 2) that by settling with his tortfeasors, plaintiff had chosen his remedy and had cut off defendant's subrogation rights as provided by statute. With these contentions we agree.

■ The benefits contemplated by the Act are phrased in terms of "disability" not in terms of "physical impairment." The former is generally understood to mean the inability to work, whereas the latter refers to the loss of bodily function.[13] Plaintiff concedes that he was able to work during the period for which compensation is sought

---

3. U.C.A., 1953, 31–41–4(1).

4. U.C.A., 1953, 31–41–2.

5. The act has absolutely no application to property damage claims. See U.C.A., 1953, 31–41–2.

6. U.C.A., 1953, 31–41–9.

7. *Supra,* footnote 4.

8. Ibid.

9. U.C.A., 1953, 31–41–11.

10. Supra, footnote 4.

11. See Compensation Systems and Utah's No-Fault Statute, Keeton, 1973 Utah Law Review 383.

12. *Jamison v. Utah Home Fire Ins. Co.,* Utah, 559 P.2d 958 (1977).

13. See 99 C.J.S. Workmen's Compensation § 296.

but argues that his income was 25 percent less than what it would have been had the accident never occurred. The Act limits disability benefits for loss of earnings to a maximum of $150 per week and plaintiff admittedly earned more than $150 per week during the entire time for which benefits were claimed. He does not, therefore, fall within the "disability" coverage. Likewise, if not disabled for purposes of loss of earnings benefits, neither is he disabled for purposes of household services benefits. Indeed, the Act was never intended to give an injured plaintiff a windfall or extra income as a benefit for having had an accident.[14]

Notwithstanding the foregoing analysis, defendant's second argument is dispositive of this appeal. As indicated *supra*, in 1974 plaintiff received no-fault benefits totalling $933.52.[15] In 1976, plaintiff accepted $6,000.00 from his tortfeasors as additional recovery and released them of any further claims for personal injury and property damage. Plaintiff asserts that the specific exclusion in the release agreement preserved any no-fault claims which may be made against the tortfeasors. He also makes various intimations that the recovery from the tortfeasors is not the same as the disability sought from the insurance carrier. For example, in his brief on appeal, plaintiff suggests that the portion of the $6,000.00 to be allocated for personal injury should be determined by "a court" which would then "offset" any insurance claim. No such motion or other request for apportionment was ever made. Before the trial court, plaintiff urged that he may well be prohibited from suing his tortfeasors for his injuries, (due to the "threshold" requirements discussed *supra*), and therefore the $6,000.00 must have been tendered as a release from only property damage liability.

We cannot adopt plaintiff's arguments. Plaintiff accepted the $6,000.00 from his tortfeasors as additional recovery in lieu of any further insurance benefits to which he might have been entitled. This agreement expressly releases plaintiff's claim against the tortfeasors for known and unknown personal injuries as well as for property damage arising from the accident. As indicated *supra*, defendant insurer is subrogated to the rights of plaintiff in asserting a claim against the tortfeasors' insurers in recovering benefits based upon liability.[16] The rights to which the subrogee succeeds can be no greater than those of the person for whom he is substituted.[17] By executing the release, plaintiff discharged the tortfeasors of any and all liability, notwithstanding the attempted "specific exclusion" relating to no-fault benefits. By so doing, plaintiff has chosen his recovery and cannot now successfully assert a claim against his insurer.

The above discussion being dispositive of the issue of the availability of further no-fault benefits, defendant has not breached its contractual obligations with plaintiff to give rise to a claim for punitive damages.

The summary judgment is therefore affirmed. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

14. Supra, footnote 12.

15. The trial judge correctly ruled that any rights defendant may have for reimbursement for this amount from the tortfeasor's insurer under U.C.A., 1953, 31–41–11 is unaffected by the settlement and by this action.

16. U.C.A., 1953, 31–41–11 provides as follows:
   Subrogation rights and arbitration between insurers.—(1) Every insurer authorized to write the insurance required by this act shall agree as a condition to being allowed to continue to write insurance in the state of Utah:
   (a) That where its insured is or would be held legally liable for the personal injuries sustained by any person to whom benefits required under this act have been paid by another insurer, including the state insurance fund, it will reimburse such other insurer for the payment of such benefits, but not in excess of the amount of damages so recoverable, . . .

17. 73 Am.Jur.2d, Subrogation, Sec. 106.