Mildred A. STREET, Plaintiff and Appellant,

v.

The FARMERS INSURANCE EXCHANGE, a corporation, and Preferred Risk Mutual Insurance Company, a corporation, Defendants and Respondents.

No. 16109.

Supreme Court of Utah.

March 28, 1980.

F. Alan Fletcher & Patrick J. Garver, of Parsons, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

A. Alma Nelson of Hanson & Garrett, Frank N. Karras, Salt Lake City, for defendants and respondents.

STEWART, Justice:

The issue in this case is whether a no-fault insurance carrier has an interest in the proceeds of a settlement between its insured and a third-party tortfeasor by virtue of a right of subrogation claimed pursuant to the Utah Automobile No-Fault Insurance Act. See §§ 31–41–1 *et seq.*, Utah Code Ann. (1953), as amended. Plaintiff also seeks an award of attorney's fees to be paid out of any recovery Farmers Insurance Exchange may obtain based on a right of subrogation.

The district court dismissed plaintiff's complaint to compel her no-fault insurer, the defendant Farmers, to endorse a draft made out jointly to plaintiff and Farmers by Preferred Risk Mutual Insurance Company. Preferred Risk, the insurer of the tortfeasor, tendered the draft in settlement of plaintiff's claim. Plaintiff seeks reversal of the lower court's dismissal and claims that Farmers had no right by way of subrogation to share in the settlement amount.

The plaintiff, Mildred A. Street, was injured in a collision between her automobile and one operated by Janet M. Clayton in August 1975. Pursuant to the terms of Street's no-fault insurance policy with Farmers Exchange, Farmers paid Street $10,132.47, of which $3,233.10 was for medical expenses, $1,816.40 for lost wages, $702.97 for property damage, and $4,380 for inability to perform household services (hereafter "loss of services").

The payment for loss of services was made in accordance with the insurance policy and as required by § 31–41–6(1)(b)(ii), which provides for payment to be made for loss of services at the rate of $12 per day "in lieu of reimbursement for expenses which would have been reasonably incurred for services that, but for the injury, the injured person would have performed for his household and regardless of whether any of these expenses are actually incurred." Street did not actually incur expenses for "loss of services," since substitute household services were provided voluntarily and without compensation by Street's neighbors, friends, and family members.

Street's damages exceeded the threshold limitations controlling tort actions against a

tortfeasor, see § 31–41–9, and she filed suit against Ms. Clayton seeking general and special damages for her injuries. This action was concluded by a settlement. Prior to settlement of the tort action, Farmers placed Street and the tortfeasor's insurer, Preferred Risk, on notice of its claim to subrogation for the amount Farmers paid to Street.

Farmers agreed to discount its subrogation claim by 20% in the event the parties to the action entered into a settlement. This was based on the comparative negligence ratio between plaintiff and tortfeasor which plaintiff and Preferred Risk had agreed to. It was agreed that plaintiff was 20% negligent and the tortfeasor, 80%.

The stipulation for dismissal and release provided for a total payment of $14,000, broken down as follows:

(1) Special damages of $7,256.14, representing $3,165.31 for medical expenses, $2,480.45 for lost wages, and $610.38 for property damages; and (2) General damages in the amount of $6,743.86. The stipulation between the parties contains the following language:

> Plaintiffs hereby acknowledge such claim and agree to pay Farmers Insurance Group such amounts, not exceeding the above itemization, which may be determined to be due and owing to Farmers Insurance Group pursuant to its subrogation rights. In entering into this stipulation, however, plaintiffs do not concede that Farmers Insurance Group's claim of subrogation rights for payments made for "services" is valid or that plaintiffs have an obligation to repay to Farmers Insurance Group any amount paid by it pursuant to the provisions of Section 31–41–6(1)(b)(ii), [U.C.A.], as set forth in the Personal Injury Protection Endorsement to plaintiffs' insurance policy.

Preferred Risk issued three drafts payable as follows:

1. A draft payable to Jack L. and Mildred A. Street and Farmers Insurance Group in the amount of $4,601.98 for medical expenses, lost wages, and property damage.

2. A draft payable to Jack L. and Mildred A. Street and Farmers Insurance Group in the amount of $3,504 for "loss of services."

3. A draft payable to Jack L. and Mildred A. Street and their attorneys in the amount of $5,894.02, representing the balance of the settlement amount.

The Streets endorsed and delivered the first draft to Farmers. The Streets refused to endorse the second draft and claimed that Farmers is not entitled to reimbursement for loss of services payments because loss of services was not a recoverable damage item. Specifically, they claimed that since this item could not have been recovered from the tortfeasor by way of damages, Farmers had no right of subrogation as to it.

Plaintiff filed suit in district court seeking an order compelling Farmers to endorse and deliver the second draft to the plaintiff and to restrain Farmers and Preferred Risk from arbitrating the reimbursement issue. Plaintiff also sought an award of attorney's fees of ⅓ of the amount received on behalf of Farmers.

The trial court granted a motion to dismiss the complaint on the ground that a no-fault insurance carrier is entitled to reimbursement to the extent that the insured recovered damages from the tortfeasor or its insurance carrier, even though the amount recovered did not include the type of damages for which the no-fault insurer had made direct payments to the no-fault insured. Thus, according to the trial court's ruling, a no-fault insurer could collect out of damages attributable to pain and suffering sums paid for an entirely different type of damage, i. e., loss of services payments to the insured.

■ Farmers' claim for reimbursement in this case cannot be sustained. *Allstate*

*Insurance Co. v. Ivie*, Utah, 606 P.2d 1197 (1980), is dispositive. It holds that the Utah No-Fault Insurance Act does not contemplate the granting of a right of subrogation to a no-fault insurer in an action by the no-fault insured against a third-party tortfeasor. The right of subrogation, as explained in *Ivie*, is a right to·be exercised in an arbitration proceeding between insurance companies of the respective parties so that double recovery can be avoided, unnecessary litigation made less likely, and the inherent conflicts between the insured and the insurer avoided.

The plaintiff also contends that she is entitled to a reasonable attorney's fee for the benefit conferred on Farmers as a result of a settlement of her action against the third-party tortfeasor. The general rule is that a subrogated insurance carrier must pay its fair share of attorney's fees and costs if it has given notice and does nothing to assist in the prosecution of the claim. *Cedarholm v. State Farm Mutual Insurance Companies*, 81 Idaho 136, 338 P.2d 93 (1959); *State Farm Mutual Automobile Insurance Co. v. Clinton*, 267 Or. 653, 518 P.2d 645 (1974); *Iowa National Mutual Insurance Co. v. Huntley*, 78 Wyo. 380, 328 P.2d 569 (1958); 44 Am.Jur.2d Insurance § 1846 (1969); and Annot. 2 A.L.R.3d 1441 (1965).

▊ The problem in this case is that there was in fact no subrogation right in Farmers to any of the sums obtained in settlement, as we held in *Ivie,·supra*. However, if a benefit was conferred on Farmers as a result of a mistake, the general rule which governs attorney's fees in a proper subrogation claim should be extended to the instant situation. Had Farmers been compelled to collect from Preferred Risk under the rule enunciated in *Ivie, supra*, it would necessarily have incurred expenses. Equity and good conscience require that Farmers should not have a free ride from plaintiff's efforts if such be the case.

▊ The resolution of plaintiff's claim for attorney's fees must depend upon findings of fact to be made by the trial court. Since the court dismissed plaintiff's complaint without taking evidence, no factual findings were made as to whether Farmers in fact benefited from Street's recovery to the extent that the Streets allegedly endorsed and delivered a draft to Farmers in the amount of $4,601.98, which represented reimbursement for medical expenses, lost wages, and property damage, and whether plaintiff did so in a mistaken belief as to the nature of the subrogation rights provided by the No-Fault Insurance Statute. If such a benefit were conferred upon Farmers by the actions of the plaintiff, plaintiff is entitled· to a reasonable attorney's fee from Farmers to the extent that Farmers benefited in the settlement secured by plaintiff.

Accordingly, we reverse the judgment of the lower court and remand the case to the trial court for further proceedings in accord with this opinion.

CROCKETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

HALL, Justice (concurring and dissenting):

I agree that Farmers has no right of subrogation.[1] However, for that very reason (i. e., as a matter of law), it is my opinion that plaintiff is not entitled to attorneys' fees. Simply stated, I deem it wholly inappropriate to compensate plaintiff for "protecting" a right of subrogation when in fact no such right existed to be protected. Farmers' *only* right to reimbursement of PIP payments is through *mandatory*, binding arbitration,[2] to which plaintiff is barred as a party.

Furthermore, the judgment having been reversed, plaintiff's demand that Farmers and Preferred Risk be restrained from arbitrating the reimbursement issue would ap-

---

1. *Allstate Insurance Co. v. Ivie*, Utah, 606 P.2d 1197 (1980).

2. Id., interpreting U.C.A., 1953, 31–41–11.

pear to be revitalized. As indicated *supra*, it is my opinion that the arbitration is only between insurers and that plaintiff should be precluded from participating in the proceeding in any way. At the very least, a factual question exists as to whether plaintiff is entitled to equitable relief as would deprive Farmers of its statutory right to arbitration. On remand, findings should be made on this issue as well.