**Jerry CHRISTENSEN, Plaintiff and Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, a corporation, aka Farmers Insurance Group, Defendant, Third-Party Plaintiff and Respondent,**

v.

**STATE FARM MUTUAL AUTO INSURANCE COMPANY, aka State Farm Insurance, Third-Party Defendant and Respondent.**

No. 18283.

Supreme Court of Utah.

Sept. 1, 1983.

S. Rex Lewis, Provo, for plaintiff and appellant.

M. Dayle Jeffs, Ray H. Ivie, Provo, for defendant, third-party plaintiff and respondent.

HALL, Chief Justice:

Plaintiff designated this action as one to "quiet title" to the proceeds of a draft received from the liability insurer as part of a settlement agreement, made payable to the plaintiff, his attorney and the plaintiff's no-fault insurer, Farmers Insurance Exchange (Farmers). The trial court dismissed the plaintiff's complaint, dismissed the third-party complaint brought by Farmers against the liability insurer, State Farm Mutual Auto Insurance Company (State Farm), and directed the no-fault insurer to pursue its subrogation rights by settlement or arbitration. Plaintiff appeals and seeks to have the decision of the trial court vacated. We affirm.

Plaintiff sustained personal injuries as the result of a collision that occurred in

Provo, Utah, on August 12, 1976. Plaintiff was stopped for a red semaphore light when the tortfeasor 'hit plaintiff's car from the rear, propelling it into the vehicle stopped directly ahead. Pursuant to his no-fault insurance policy with Farmers, plaintiff received personal injury protection benefits (PIP) in the amount of $17,194.95. Since plaintiff's damages exceeded the threshold limitations controlling tort actions against a tortfeasor,[1] plaintiff sought recovery from the tortfeasor and his liability insurer, State Farm. Farmers subsequently filed notice on State Farm of its subrogation claim for the PIP benefits already paid to plaintiff. Farmers also notified plaintiff's attorney that he was not to purport to represent Farmers' interest, which notice plaintiff's attorney apparently ignored.

A settlement of $70,000 was eventually reached. State Farm tendered three separate checks to satisfy that settlement: one payable to plaintiff and his attorney for $48,281.81; the second payable to plaintiff, his attorney and Blue Cross for $4,523.24; and the third payable to plaintiff, his attorney and Farmers for $17,194.95. It is the third check that is in issue here.

Upon receipt of the three checks, plaintiff signed a general release, releasing all further claims against State Farm. Plaintiff also signed a settlement summary which itemized the three checks, showed payment to plaintiff only of his portion of the $48,-281.81 check and reflected the fact that the third check was intended to be reimbursement for PIP payments. Plaintiff testified that he understood at the time of the settlement that he was not to receive any of the proceeds of the third draft.

The practice of drawing separate checks, one for the benefit of the injured party alone to cover general damages, and another jointly in favor of the injured party and his no-fault insurer to cover prior PIP payments, was observed and sanctioned by this Court in *Transamerica Insurance Co. v. Barnes*.[2] In *Barnes,* the Court said: "If the settlement were intended to include plaintiff's prior medical expenses, two drafts should have been issued, one to plaintiff and defendant jointly and one to defendant, alone."[3]

Consistent with that practice, insurance companies who had received notice of subrogation from the injured party's no-fault insurer prepared joint checks in the amount of the claim. The witness for State Farm testified that this was the practice of State Farm at the time the settlement with plaintiff was made. Therefore, State Farm, in good faith and according to prevalent practice, bargained with plaintiff for a settlement that included PIP payments. Plaintiff, on his part, bargained for and received a settlement *which he accepted* with full knowledge that PIP payments were included in it. It was only after *Allstate Insurance Co. v. Ivie*[4] was decided, a year and a half after settlement and release,[5] that plaintiff challenged the settlement and attempted to secure a significantly larger settlement than he had bargained for: full entitlement to the $17,194.95 that had been intended as PIP reimbursement.

In *Ivie*, it was held that there is no right of subrogation on the part of a no-fault insurer to funds received by its insured in a subsequent personal injury action against the tortfeasor. In that case, the no-fault insured reached a settlement with the liability insurer, but did so without any understanding or agreement that the settlement figure included funds to be used for the reimbursement of PIP benefits.

There is nothing in the *Ivie* holding which mandates that a settlement agreement, bargained for at arm's length and accepted by the parties with a clear understanding that a portion of the settlement was reimbursement to the PIP insurer, be reconstrued by

---

1. *See* U.C.A., 1953, § 31–41–9(1).

2. 29 Utah 2d 101, 505 P.2d 783 (1972).

3. *Id.* 505 P.2d at 787.

4. Utah, 606 P.2d 1197 (1980).

5. The settlement agreement was reached on July 3, 1978. The release was signed and dated August 2, 1978, and received by State Farm on August 7, 1978. *Ivie* was handed down on February 7, 1980.

the courts to alter the terms of the settlement and to give a windfall to the insured party.[6]

A number of recent cases have discussed the relative rights of an injured party, his no-fault insurer, the tortfeasor and the tortfeasor's insurer.[7] All of these cases are based on the proposition that "a basic principle of the No-Fault Act is to prevent double recovery by the no-fault insured."[8]

 Where, as here, the no-fault insured had received PIP payments, allowing him to lay claim to funds that admittedly had been intended both by plaintiff and by the liability insurer to be reimbursement to plaintiff's no-fault insurer for those payments would clearly constitute double recovery, which this Court will not sanction.

*Ivie* also held that any reimbursement claimed by the no-fault insurer for PIP advancements must be sought in an arbitration proceeding or by settlement between the insurance companies of the respective parties.[9]

 Where an insured *voluntarily* tenders a portion of his settlement to the no-fault insurer as reimbursement for PIP payments, this Court will not disturb that tender, even though the no-fault insurer has no entitlement to that reimbursement under *Ivie*.[10]

 However, where, as here, the PIP insured has not tendered a portion of the settlement to the PIP insurer, even though the plaintiff and the tortfeasor's insurer had originally intended that to be done, the trial court correctly ruled that Farmers must seek its reimbursement by settlement or arbitration with State Farm.

To prevent an unbargained-for windfall to the plaintiff and to give effect to the terms of the agreement as best as is practicable under the circumstances, State Farm may withhold that portion of the settlement with plaintiff which had been intended as reimbursement to the PIP insurer.

In regard to plaintiff's contention that he is entitled to retain a reasonable attorney fee, a review of the pleadings on file does not reflect any claim for attorney fees. Furthermore, the matter of attorney fees was not an issue at trial, nor was any evidence presented of a benefit conferred upon the no-fault insurer as the result of plaintiff's efforts. In fact, the testimony of State Farm's agent was to the contrary in that he had already determined liability and was prepared to pay Farmers without the need of arbitration. Also, Farmers had in advance advised counsel for plaintiff not to represent their interest since they intended to handle their own subrogation claim.

Plaintiff's remaining contention that the no-fault insurer is not entitled to reimbursement for the payment of loss of services in the absence of a showing of actual loss is also without merit. Plaintiff simply has no standing to raise the issue. He has already received the sum of $4,368 for loss of services (included in the total PIP payment of $17,194.95), and cannot again recover that sum for it would constitute a double recovery. Consequently, whether Farmers is entitled to reimbursement of that sum is of no concern to plaintiff but is a matter to be determined solely between the insurers in their settlement or arbitration proceedings.

The judgment of the trial court is affirmed. Costs to respondents.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.

6.  *Jaramillo v. State Farm Ins. Co.,* Utah, 669 P.2d 1311 (also filed this date).

7.  *See, e.g., Dupuis v. Nielson,* Utah, 624 P.2d 685 (1981); *Street v. Farmers Ins. Exch.,* Utah, 609 P.2d 1343 (1980); *Allstate Ins. Co. v. Ivie,* Utah, 606 P.2d 1197 (1980).

8.  *Dupuis, supra* n. 7, 624 P.2d at 686.

9.  *See* U.C.A., 1953, § 31–14–11.

10. *See Guaranty Nat. Ins. Co. v. Morris,* Utah, 611 P.2d 725 (1980); *Street v. Farmers Ins. Exch.,* Utah, 609 P.2d 1343 (1980).