Jerry R. JARAMILLO, Plaintiff and Respondent,

v.

FARMERS INSURANCE GROUP, a corporation, and State Farm Insurance Co., a corporation, Defendants and Appellant.

No. 18019.

Supreme Court of Utah.

Sept. 1, 1983.

Frank G. Noel, Salt Lake City, for defendants and appellants.

L. Charles Evans, Libby, Mont., Daniel Barker, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Plaintiff brought this action to recover a balance of $2,694.13 claimed due under the terms of a settlement agreement reached in compromise of a personal injury action against C. Dale Sharp, defendant State Farm Insurance Company's insured. On the basis of stipulated facts, the trial court granted summary judgment in favor of plaintiff, and State Farm appeals.

Plaintiff sustained injuries as the result of a collision with a vehicle driven by Sharp. He received personal injury protection (PIP) benefits in the amount of $2,694.13 from his own no-fault insurance carrier, defendant Farmers Insurance Group. Plaintiff dismissed the personal injury action against Sharp when he was successful in negotiating the subject settlement agreement with State Farm.

It was stipulated that plaintiff and his attorney were aware that it was State Farm's intention to compromise the liability to both plaintiff and Farmers by payment of the sum of $12,000, which was to be disbursed as follows: $9,305.87 to plaintiff in full settlement of his claims, and $2,694.13 to Farmers as reimbursement for its payment to plaintiff of PIP benefits. That portion of their stipulation which so provides reads as follows:

5. Plaintiff and plaintiff's attorney, at the time of the settlement on October 20, 1980, because of previous discussions and negotiations with State Farm representatives, and because of the discussions between plaintiff's attorney and State Farm's representative at the time of settlement, knew or had reason to believe and assumed that State Farm intended at the time of the settlement that $9,305.87 would be paid to plaintiff in full settlement of his claims, and that $2,694.13 would go to Farmers as reimbursement to it for its payment to plaintiff of no-fault benefits, the total of the two being the sum of $12,000.00; and further because of said negotiations and discussions, at the time of settlement State Farm believed and assumed that plaintiff also intended the money to be disbursed as described above.

Following the agreement of settlement reached on October 20, 1980, two drafts were issued and mailed to plaintiff's attorney, one in the amount of $9,305.87, payable jointly to plaintiff and his attorney, and the other in the amount of $2,694.13, payable jointly to plaintiff and Farmers. The letter of transmittal, dated October 27, 1980, also recited the terms of settlement:

These drafts are being tendered in full in final settlement of all claims in this case of both your client and Farmer's [sic] Insurance subrogation claim for no-fault benefits.

Plaintiff executed an accompanying release, which recited as consideration therefor payment of the sum of $12,000. He negotiated the $9,305.87 check. He then requested Farmers to endorse the other check over to him. Farmers refused and plaintiff initially brought this action

against only Farmers, seeking to recover the amount of the check. However, when State Farm stopped payment on the check, plaintiff joined State Farm as a party defendant. Farmers and State Farm filed separate appeals from the judgment in favor of plaintiff. Farmers has since withdrawn its appeal and is not a party to this proceeding.

On appeal, State Farm focuses on the settlement agreement as evidenced by the stipulation of the parties, and contends that plaintiff is bound by the terms thereof, and thus is not entitled to receive those funds which he knew were intended for the reimbursement of Farmers. Plaintiff's rejoinder is that the ruling of this Court in *Allstate Ins. Co. v. Ivie* [1] precludes any deductions of no-fault benefits from the overall settlement figure. He further asserts that the release he executed recites, without ambiguity, payment of consideration therefor in the amount of $12,000, and that he is therefore entitled to receive that amount.

The crux of this case is not the ruling in *Ivie;* rather, it is whether the settlement agreement that compromised both the liability of State Farm's insured and that of its own statutory obligation [2] to reimburse Farmers was valid and binding. We conclude that it was.

■ *Ivie* stands for the proposition that the Utah Automobile No-Fault Insurance Act [3] does not confer on a no-fault insurer the right of subrogation to funds received by its insured in a subsequent action against the tortfeasor. There is nothing about the holding in that case which precludes a liability insurer from negotiating a settlement with the tort victim which compromises both its own liability and that of its insured.

It is also to be observed that *Ivie* arose out of a different set of facts. In that case, the tort victim reached a settlement with the liability insurer, but did so without any understanding or agreement that the settle-ment figure included funds to be used for the reimbursement of the no-fault insurer, whereas in the instant case, plaintiff admittedly understood that the $12,000 settlement figure included funds intended for the reimbursement of no-fault benefits paid by Farmers.

■ In light of the stipulation of the parties, it is clear that plaintiff outwardly accepted State Farm's terms of settlement. Any contrary intentions he may have had were left unexpressed and were not otherwise disclosed. It is well established in the law that unexpressed intentions do not affect the validity of a contract. The rule of law is as was stated in *Allen v. Bissinger & Co.:* [4]

> The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered by the language employed by them, and the law imputes to a person an intention corresponding to the reasonable meaning of its words and acts. It judges of his intentions by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts judged by reasonable standard manifests an intention to agree to the matter in question, that agreement is established and it is immaterial what may be the real but unexpressed state of his mind upon the subject.

■ Furthermore, plaintiff accepted State Farm's tender of the sum of $9,305.87 and negotiated the check drawn in his favor in that amount. It was not until after he had done so that he then laid claim to the further sum of $2,694.13.

Plaintiff's remaining contention that the express terms of the release he executed entitle him to the full amount of the settlement figure also fails. This is so because when the release is contrasted with the stipulation of the parties, it does not reflect their understanding and intentions at the time the settlement agreement was

1. Utah, 606 P.2d 1197 (1980).

2. Set forth in U.C.A., 1953, § 31–41–11.

3. U.C.A., 1953, § 31–41–1, *et seq.*

4. 62 Utah 226, 219 P. 539, 541–42 (1923).

reached. Therefore, the release is irrelevant to the issues presented by this appeal.

The judgment is reversed and the case is remanded for entry of judgment in favor of State Farm. No costs awarded.

OAKS and HOWE, JJ., concur.

STEWART, Justice (dissenting).

I respectfully submit that the majority fails to give effect to the law stated in *Allstate Insurance Co. v. Ivie,* Utah, 606 P.2d 1197 (1980), and *Allstate Insurance Co. v. Anderson,* Utah, 608 P.2d 235 (1980), and misapplies governing principles of contract law in holding that the plaintiff is not entitled to the full settlement proceeds of $12,-000.

The release signed by State Farm Insurance Co. and plaintiff states in relevant part:

For the sole consideration of twelve thousand and no/100 Dollars, . . . the undersigned [Jerry R. Jaramillo] releases and forever discharges Clarence Dale Sharp . . . .

The plain meaning of this document is that the plaintiff was to receive a full $12,-000 from State Farm in settlement of his claim. The release does not state that $2,694.13 of the total was to go to Farmers Insurance Group as reimbursement for the PIP payments paid by Farmers to the plaintiff, or that the PIP payments figured in any way in the settlement and the release. The release was in full accord with the law stated in *Allstate Insurance Co. v. Ivie, supra; Allstate Insurance Co. v. Anderson, supra,* and *Street v. Farmers Insurance Exchange,* Utah, 609 P.2d 1343 (1980), that remuneration for PIP payments is a matter solely between the no-fault insurance company and the liability insurance carrier in an arbitration proceeding between them.

In *Anderson* the facts were similar to the instant case except that there was no stipulation between the injured person and the liability insurance carrier, as in the instant case, and the plaintiff in *Anderson* was the no-fault carrier suing its insured, rather than the liability carrier suing the insured,

as in this case. In *Anderson* the Court stated:

Plaintiff, Allstate Insurance Company, brought this action to recover no-fault insurance benefits paid to its insured, the defendant, following a settlement between the defendant and the insurance carrier of a third-party tortfeasor.

In January 1976 defendant, a passenger in a vehicle insured by Allstate, was injured in an automobile accident. Pursuant to his claim, Allstate paid defendant $2,000 in no-fault medical benefits. Subsequently, defendant filed suit against the tortfeasor, who was insured by State Farm Mutual Insurance Company. Defendant entered into a settlement agreement with State Farm. On settlement of that suit defendant executed a release, and State Farm agreed to pay a settlement amount of $10,000. Two thousand dollars of this amount was made payable jointly to defendant and Allstate. Defendant refused to deliver the draft, and Allstate initiated this action.

The issue is whether Allstate is entitled, because of a right of subrogation, to recover the no-fault payments made to its insured out of proceeds of a settlement with a third-party tortfeasor.

We hold that *Allstate Insurance Co. v. Ivie,* Utah, 606 P.2d 1197 (1980), is dispositive of this case.

Thus, we held that the no-fault insurer was not entitled to recover from the insured. *Compare Street v. Farmers Insurance Exchange, supra,* in which the no-fault reimburseable damage categories were broken out in the settlement papers.

The fact that State Farm, the liability insurer in this case, is not the no-fault carrier as in *Ivie* and *Anderson* is of no consequence. Although the right of subrogation is not technically at issue in this case, that is also of no consequence. Both *Ivie* and *Anderson* held that the injured person was entitled to the total of a lump sum settlement and that PIP payments could not be deducted therefrom. In *Ivie* we stated, "[T]he tort victim's recovery . . . cannot be reduced by the PIP payments." 606 P.2d at

1203. Where, however, the parties have expressly provided otherwise, the case is different. *Christensen v. Farmers Insurance Exchange,* Utah, 669 P.2d 1236 (1983). *Compare Street v. Farmers Insurance Exchange, supra.*

The stipulation in the instant case, which was entered into for the purpose of disposing of the matter on summary judgment, does not indicate in any way that the parties agreed to modify the simple and clear terms of the release. There is nothing in either the release or the stipulation indicating that the parties agreed that the PIP payments were to be deducted from the total settlement or that the settlement was anything more than it purported to be—a settlement of the injured party with the liability insurance carrier, State Farm. The majority states that the settlement agreement is at variance with the stipulated facts as to the parties' beliefs regarding their intent. That is, I submit, incorrect. There is nothing in the stipulation that adds to or takes away from the legal effect of the release. The relevant portion of the stipulation states:

> 5. Plaintiff and plaintiff's attorney, at the time of the settlement on October 20, 1980, because of previous discussions and negotiations with State Farm representatives, and because of the discussions between plaintiff's attorney and State Farm's representative at the time of settlement, knew or had reason to believe and assumed that State Farm intended at the time of the settlement that $9,305.87 would be paid to plaintiff in full settlement of his claims, and that $2,694.13 would go to Farmers as reimbursement to it for its payment to plaintiff of no-fault benefits, the total of the two being the sum of $12,000.00; and further because of said negotiations and discussions, at the time of settlement State Farm believed and assumed that plaintiff also intended the money to be disbursed as described above.

The majority also argues that "[i]n the light of the stipulation of the parties, it is clear that plaintiff outwardly accepted State Farm's terms of settlement." That conclusion does not, I submit, follow. The stipulation only states that plaintiff "knew or had reason to believe and assumed that State Farm intended at the time of settlement" that $2,694.13 of the total settlement would go to Farmers as reimbursement for the paid-out PIP benefits. The stipulation does not state that plaintiff ever *agreed* to that condition. Apparently, State Farm was unaware of the effect of the No-Fault Act, *Allstate v. Ivie, supra, Allstate v. Anderson, supra,* and *Street v. Farmers Insurance Exchange, supra.* In short, State Farm was operating under a mistake of law, and it was not plaintiff's duty either to inform his adversary of the law or to accede to its misunderstanding.

In all events, plaintiff's mere belief or assumption of State Farm's intent does not constitute assent to that intent. On straight contract principles, mere silence, without any accompanying outward acts, is not ordinarily sufficient to constitute assent. 1 *Corbin on Contracts* § 72 (1963 ed.). *See generally Annot., Silence When Offer Is Made or Failure to Reject It Is an Acceptance Which Will Consummate a Bilateral Contract,* 77 A.L.R. 1141 (1932). Without plaintiff's assent to a modification of the release, there was no binding covenant to enforce it. *See Oberhansly v. Earle,* Utah, 572 P.2d 1384 (1977); *Pingree v. Continental Group of Utah, Inc.,* Utah, 558 P.2d 1317 (1976); *Morgan v. Board of State Lands,* Utah, 549 P.2d 695 (1976); *B & R Supply Co. v. Bringhurst,* 28 Utah 2d 442, 503 P.2d 1216 (1972).

The majority also states that "[t]here is nothing about the holding in that case [*Ivie*] that precludes a liability insurer from negotiating a settlement with the tort victim which compromises both its own liability and that of its insured." That, I submit, is not accurate. By what legal right can a stranger compromise another's legal liability? Under the Utah No-Fault Act and *Ivie* and its progeny, the obligation to reimburse the no-fault insurer is solely that of the

liability insurer, and the injured person can not compromise that right.

I see no relevancy in the fact that in *Ivie* there was no "understanding or agreement that the settlement figure included funds to be used for the reimbursement of the no-fault insurer ...," as the majority states. That was true then, it was also true in *Anderson,* and it is just as true in this case. There is not a shred of evidence that the parties agreed otherwise in this case. The stipulation states only what plaintiff supposed defendant intended—which must also have been the case in *Ivie.* It states nothing whatsoever about what plaintiff stated he intended. In short, the parties did not agree to deduct PIP payments, nor was there a mutual mistake of fact.

That State Farm "believed and assumed that plaintiff also intended the money to be disbursed [according to this arrangement]" certainly does not prove plaintiff's assent. Plaintiff's assent to the condition must have been physically manifested in words or deeds. The supposition by State Farm that plaintiff intended to so contract does not create any contractual assent by plaintiff. *See Morgan v. Board of State Lands, supra.*

The cover letter dated October 27, 1980, which accompanied the settlement checks, adds nothing to State Farm's argument. That letter stated:

> These drafts are being tendered in full in final settlement of all claims in this case of both your client and Farmer's Insurance subrogation claim for no-fault benefits.

This statement indicates only that State Farm was unaware of the ruling in *Ivie* and erroneously relied upon the prior practice which the No-Fault Act displaced. State Farm now relies on the prior practice to avoid its contractual commitment.

The majority cites *Allen v. Bissinger & Co.,* 62 Utah 226, 219 P. 539 (1923), for the proposition that "the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Id.* at 231, 219 P. at 541, *quoting* 13 C.J. Contracts § 49 (1917). In *Bissinger,* the "words and acts" which evidenced the par-

ties' intent were a series of letters between the parties. In the present case, the parties' stipulation deals only with the parties' beliefs and assumptions, not with what they said or did. The only objective evidence of their intent is (1) the written release signed by plaintiff, and (2) plaintiff's attempt to cash both settlement checks. Thus, rather than supporting the majority's conclusion that the parties intended that Farmers be reimbursed, *Allen v. Bissinger & Co., supra,* supports that conclusion that they did *not* so intend.

In light of the above, *Ivie, Anderson,* and *Street* control this case. Thus, Farmers has no right of subrogation, and plaintiff is entitled to the full $12,000 settlement payable to him by State Farm under the settlement agreement. I would therefore affirm the trial court.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.