1999 UT 33

**BEAR RIVER MUTUAL INSURANCE CO., Plaintiff and Petitioner,**

v.

**John WALL and Nancy Wall, Defendants and Respondents.**

No. 970250.

Supreme Court of Utah.

April 9, 1999.

Thomas A. Duffin, Hans M. Scheffler, Daniel O. Duffin, Salt Lake City, for plaintiff.

John Wall, Nancy Wall, North Salt Lake, pro se.

STEWART, Justice:

¶ 1 Nancy Wall was in an auto accident in August 1992 with Lana Waters. Wall's insurer, Bear River Mutual Insurance Company, paid her personal injury protection ("PIP") benefits. Wall sued Waters. Wall, Waters, and Waters' insurer entered into a settlement that released Waters and her insurer from any further liability. Thereafter, Wall requested additional PIP benefits from

Bear River. Bear River asserted that the Wall/Waters settlement released it from further PIP obligations and brought a declaratory judgment action against the Walls in district court, which granted summary judgment in the Walls' favor and required Bear River to pay additional PIP benefits to Wall. The Court of Appeals affirmed. *Bear River Mutual Ins. Co. v. Wall,* 937 P.2d 1282 (Utah Ct.App.1997). We granted certiorari, 945 P.2d 1118 (Utah 1997), and affirm.

¶ 2 The sole issue Bear River raises is whether *Allstate Insurance Co. v. Ivie,* 606 P.2d 1197 (Utah 1980), overruled *Jones v. Transamerica Insurance Co.,* 592 P.2d 609 (Utah 1979). Both cases construed Utah Code Ann. § 31–41–11 of the former No–Fault Insurance Act,[1] which states:

(1) Every insurer authorized to write the insurance required by this act shall agree as a condition to being allowed to continue to write insurance in the State of Utah:

(a) That where its insured is or would be held legally liable for the personal injuries sustained by any person to whom benefits required under this act have been paid by another insurer, including the state insurance fund, it will reimburse such other insurer for the payment of such benefits, but not in excess of the amount of damages so recoverable, and

(b) That the issue of liability for such reimbursement and the amount of same shall be decided by mandatory, binding arbitration between the insurers.

Utah Code Ann. § 31–41–11 (1974).[2]

¶ 3 The Court of Appeals, after analyzing *Jones* and *Ivie,* held: "[T]he supreme court rejected the analysis underlying *Jones* in *Ivie,* and has reaffirmed the *Ivie* analysis in subsequent cases[; therefore], the holding and underlying subrogation principles of *Jones* have been overruled sub silentio by

*Ivie* and later supreme court cases." *Bear River,* 937 P.2d at 1291. The Court of Appeals stated:

Bear River's obligation to continue to pay full PIP benefits was not extinguished by the settlement and release between the Walls and the tortfeasor because there was no evidence that the parties to the settlement and release understood or intended that the settlement sum include PIP benefits. In addition, the release did not extinguish Bear River's right, under Utah's no-fault statute, to seek reimbursement for further PIP payments from the tortfeasor's insurer through binding arbitration. Thus, the Walls were entitled to judgment as a matter of law.

*Id.* at 1292.

■ ¶ 4 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court." *State v. Harmon,* 910 P.2d 1196, 1199 (Utah 1995). "We review the court of appeals' decision for correctness and give its conclusions of law no deference." *Newspaper Agency Corp. v. Auditing Div.,* 938 P.2d 266, 267 (Utah 1997).

¶ 5 Bear River argues that *Ivie* did not overrule *Jones* and that *Jones* is dispositive. The Walls counter that *Ivie* overruled *Jones,* as the Court of Appeals held.

¶ 6 *Jones* held that PIP insurers, under section 31–41–11, need not pay continuing PIP benefits to tort victims *after* the victims settle with the tortfeasors and the tortfeasors' liability insurer. There, the tort victim in an auto accident received no-fault benefits from his PIP insurer. Approximately 18 months later, he claimed additional PIP benefits and also "entered into settlement negotiations with his tortfeasors" for general damages. *Jones,* 592 P.2d at 610. He settled with the tortfeasors, but the PIP insurer refused to pay further benefits. The tort victim sued to recover the benefits. After the district court granted the PIP insurer's

---

**1.** In 1985, the Legislature repealed the entire insurance title, Utah Code Ann. tit. 31 (1953), including the No–Fault Insurance Act, and replaced it with Utah Code Ann. tit. 31A (1985). *See* S.B. 232, 46th Leg., Reg. Sess., 1985 Utah Laws 658, 781. The former No–Fault Insurance Act was re-enacted as Utah Code Ann. tit. 31A, ch. 22, pt. III (1985), entitled "Motor Vehicle Insurance."

**2.** This section is now located at Utah Code Ann. § 31A–22–309(6) (1994), and differs slightly from earlier sections in wording but not in substance.

motion for summary judgment, the tort victim appealed. *See id.* at 611. We affirmed, holding under principles of subrogation that a PIP insurer is not obligated to make PIP payments after the tort victim's settlement with the tortfeasor and liability insurer. *See id.* at 612.

¶ 7 *Ivie* held, under section 31–41–11, that PIP insurers could not be reimbursed for *previously paid* PIP benefits from tort victims after their settlements with the tortfeasors and liability insurers. There, an accident victim received PIP benefits from its insurer and sued the tortfeasor for general damages. After the tort victim settled with the tortfeasor, the PIP insurer sued the tort victim for reimbursement of PIP benefits. *See Ivie,* 606 P.2d at 1198. The trial court granted summary judgment for the PIP insurer, and the tort victim appealed. *See id.* at 1199. We reversed, holding that tort victims are not obligated to reimburse their PIP insurers from their settlements for paid PIP benefits. However, we stated that PIP insurers may pursue reimbursement from liability insurers in arbitration according to their statutory right. *See id.* at 1203.

¶ 8 In *Ivie,* we gave the first broad overview of no-fault statutes in general and Utah's no-fault insurance statute specifically. We explained the two types of "no-fault" statutes: add-on statutes and partial tort exemption statutes. *See id.* at 1199. The first type, the add-on statute, is not truly no-fault but "merely add[s] to the negligence system of reparations with some kind of no-fault benefits to an injured person, without regard to fault." *Id.* These statutes preserve all tort claims; however, some add-on statutes provide for reimbursement that avoids double recovery. *See id.*

¶ 9 The second type is the partial tort exemption type. These statutes give tort victims a right of action against their insurers, which must pay no-fault benefits up to a certain statutory limit. *See id.* Under this second type, tort victims can still bring fault-based claims against tortfeasors and their insurers for pain and suffering and for economic losses greater than the statutory limit. *See id.*

¶ 10 We explained in *Ivie* that Utah's no-fault insurance statute is a partial tort exemption statute and has two components. *See id.* The first component, "no-fault insurance benefits," allows accident victims to claim PIP benefits from their own insurers—regardless of fault—up to statutory limits. *See* Utah Code Ann. § 31–41–6 (1974 & Supp.1979).[3] The second component, "partial elimination of tort claims for bodily injury," provides that tortfeasors who maintain no-fault insurance on their vehicles are not personally liable for PIP benefits and are immune from suit for PIP-type claims. *See id.* § 31–41–9(2). However, this immunity is partial: tort victims may still bring claims against tortfeasors for pain and suffering, as well as for economic losses, in excess of the statutory PIP limit. *See id.* §§ 31–41–2, –9(1).[4] Because tortfeasors who comply with the Act are not personally responsible for PIP benefits, a PIP insurer seeking "reimbursement" for PIP benefits it paid must undergo "mandatory, binding arbitration" with the liability insurer. *Id.* § 31–41–11(1)(b).[5]

¶ 11 Factually, this case is closer to *Jones* than *Ivie* because Bear River's declaratory action concerns its *continuing* obligation to pay PIP benefits. However, as to the responsibilities of tort victims, tortfeasors, PIP insurers, and liability insurers, *Ivie* and *Jones* are irreconcilable. *Ivie* implicitly rejected *Jones.* Although *Ivie* did not expressly overrule *Jones*—indeed, the *Ivie* majority did not even cite *Jones*—the two *Ivie* dissents referred to *Jones* and accused the majority of promulgating a "new rule of law."[6]

---

3. This section is now found at Utah Code Ann. §§ 31A–22–302(2), –307 (1994).

4. Section 31–41–9 is now found at *id.* § 31A–22–309(1).

5. This section is now found at *id.* § 31A–22–309(6)(b).

6. Justice Hall, the *Jones* author, dissented in *Ivie,* stating clearly that he was not as concerned about the "new rule" as its application in that case:

I have no particular apprehension as to the application of the new rule of law to *future* cases since its practical, dollars and cents effect would appear to be no different than if the

*See Ivie,* 606 P.2d at 1205 (Hall, J., dissenting); *see id.* at 1206 (Crockett, C.J., dissenting). The *Ivie* dissents also explicitly recognized that *Jones* and *Ivie* are irreconcilable.

■ ¶ 12 *Jones* and *Ivie* construed Utah Code Ann. § 31-41-11 differently. *Jones* assumed without analysis that section 11 incorporated an equitable right of subrogation: "[T]he statute specifically affords subrogation rights and arbitration between insurers whenever no-fault benefits are paid." *Jones,* 592 P.2d at 611. However, *Ivie* analyzed the basic purpose and intent of the No–Fault Act for the first time and stated that section 11 did not permit an equitable right of subrogation for PIP payments. *See Ivie,* 606 P.2d at 1201–03. This is true, *Ivie* stated, because a tortfeasor's *"personal liability does not include PIP payments." Id.* at 1203 (emphasis added). Since a liability insurer stands in the shoes of a tortfeasor, a liability insurer is not liable to a tort victim for PIP payments.[7] "Thus, the tort victim's recovery from the liability insurer cannot be reduced by the PIP payments."[8] *Id.* Accordingly, *Ivie* held that a PIP insurer has "no right of subrogation to the [tort victim's] recovery." *Id. Ivie's* rejection of the principle of equitable subrogation with respect to PIP payments

did not distinguish between future and past PIP benefits.[9] *Ivie,* however, did recognize that section 11 "grants the no-fault insurer a limited equitable right to seek reimbursement in [an] arbitration proceeding against the liability insurer." *Id.* at 1202.

¶ 13 Under *Jones,* it would logically be assumed that the settlement of an auto accident claim includes compensation for injuries covered by PIP benefits. *See Jones,* 592 P.2d at 612. However, under *Ivie,* a tortfeasor/tort victim settlement does not include money for PIP-type amounts. *See Ivie,* 606 P.2d at 1202–03.

¶ 14 Post-*Ivie* cases have applied and followed the *Ivie* analysis rather than *Jones,* as the Court of Appeals showed.[10] *See Bear River,* 937 P.2d at 1288–91. Numerous factually similar cases reaffirm *Ivie. See Ohio Cas. Ins. Co. v. Brundage,* 674 P.2d 101, 102 (Utah 1983); *Street v. Farmers Ins. Exch.,* 609 P.2d 1343, 1345–46 (Utah 1980); *Allstate Ins. Co. v. Anderson,* 608 P.2d 235, 236 (Utah 1980). Concurring opinions in two of those cases indicate that *Ivie* was the "new law" in Utah—an obvious reference to a change from *Jones. See Street,* 609 P.2d at 1346 (Hall, J., concurring and dissenting on the issue of

doctrine of subrogation were adhered to. In a judicial proceeding, the court will simply no longer make an award for damages already compensated by PIP payments, and, similarly, in negotiating a settlement of a lawsuit, an insurer will no doubt "short" his settlement offer by a sum adequate to cover its reimbursement obligation for PIP payments advanced by the insurer of the injured party.

On the other hand, applying the new rule of law in the *present* case causes me considerable concern for it effects a highly unjust and harsh result. The majority would be better advised to abide by the so-called "Sunburst Doctrine" and thereby make the change in the law *prospective* only.

*Ivie,* 606 P.2d at 1205 (Hall, J., dissenting) (footnote omitted); *see Street v. Farmers Ins. Exch.,* 609 P.2d 1343, 1346 (Utah 1980) (Hall, J., concurring and dissenting) (indicating that *Ivie* is now the law with respect to the nonexistence of a PIP insurer's subrogation rights); *see also Ivie,* 606 P.2d at 1206 (Crockett, C.J., dissenting).

**7.** A liability insurer is, however, potentially liable to pay the amount of PIP benefits to a PIP insurer in a mandatory arbitration under section 31-41-11(1)(b).

**8.** The recovery *could* be reduced by an amount equal to the PIP payments *if* all the parties clearly agreed thereto in a settlement agreement. *See infra* ¶¶ 19–20.

**9.** We also note that the no-fault statute does not distinguish between future and past PIP benefits.

**10.** Bear River argues that the

cost for insurance and premiums ha[s] been based, in large part, on *Jones* ... [and a failure] to reverse the Court of Appeals' decision [in this case will force] the insurance industry in this State ... to reassess its premium structures, as well as ... to change how all carriers will handle PIP subrogation.

In the first place, there is no evidence whatsoever in this case that the industry will have to change its premium structure at all. We must assume that the industry correctly read and applied *Ivie* and made any necessary adjustments years ago. Because *Ivie,* decided only one year after *Jones,* has been consistently cited as the law regarding the obligations of PIP insurers both before and after their insured settles with the tortfeasor and the liability insurer, Bear River's argument is without merit. Certainly Bear River has been as aware of *Ivie* as it has of *Jones.*

attorney fees); *Anderson,* 608 P.2d at 236 (Crockett, C.J., concurring).

¶ 15 The factual similarity of *Ivie* with these cases may suggest that *Ivie* did not overrule *Jones* but merely stated a different rule under facts different from *Jones.* However, post-*Ivie* cases clearly show that subrogation was not relied on even in cases factually similar to *Jones.* See *Simonson v. Travis,* 728 P.2d 999, 1001 (Utah 1986) ("Apparently before this Court decided [*Ivie*], the concept prevailed that a no-fault carrier had subrogation rights against the liability insurance carrier of the driver at fault."); *Laub v. South Cent. Utah Tel. Assoc., Inc.,* 657 P.2d 1304, 1305, 1309 (Utah 1982) (citing *Ivie* and stating, under facts similar to *Jones,* that a "no-fault insurer's *only* right of reimbursement through subrogation is against the liability insurer in an arbitration proceeding" (emphasis added)); *Allstate Ins. Co. v. United States Fidelity & Guar. Co.,* 619 P.2d 329, 331 n. 3 (Utah 1980) (suggesting, while not an issue on appeal, that *Ivie* would apply to a case in which, like *Jones,* a PIP insurer paid PIP benefits before the tort victim's suit against the tortfeasor and liability insurer was decided or settled).[11]

¶ 16 Post-*Ivie* cases have cited *Jones* for various reasons. See *Wilde v. Mid–Century Ins. Co.,* 635 P.2d 417, 419 (Utah 1981); *Dupuis v. Nielson,* 624 P.2d 685, 686 (Utah 1981) (citing *Ivie* also); *Osuala v. Aetna Life & Cas.,* 608 P.2d 242, 243 n. 8 (Utah 1980); *see also Bear River,* 937 P.2d at 1288 n. 10. But since *Ivie,* this Court has not used *Jones* as Bear River would: to preclude PIP insurers, based upon subrogation principles, from making additional PIP payments after tort victims settle their claims against tortfeasors and their liability insurers.

¶ 17 As the Court of Appeals noted, *Ivie* has been distinguished in situations when tort victims *clearly understand* that their settlements with tortfeasors and liability insurers were specifically reduced by, and reimbursement to the PIP insurers made in, an amount equal to the PIP insurers' payments. See *Bear River,* 937 P.2d at 1289–90 (citing *Pett v. Equitable Ins. Co.,* 714 P.2d 652 (Utah 1986); *Christensen v. Farmers Ins. Exch.,* 669 P.2d 1236 (Utah 1983); *Jaramillo v. Farmers Ins. Group,* 669 P.2d 1231 (Utah 1983)). These cases do not undermine *Ivie.* They were decided under contract law. See *Jaramillo,* 669 P.2d at 1233 ("The crux of this case is not the ruling in *Ivie* [but] whether the settlement agreement ... was valid and binding."). *Ivie* remains the law under section 31–41–11 in cases factually similar to both *Ivie* and *Jones.*[12]

¶ 18 Bear River makes several other arguments in favor of reversal. First, it states repeatedly that affirming will give a double recovery. Additionally, it states that Wall waived her right to "duplicate benefits" in her insurance policy. Double recovery, however, is *not* a consequence of the *Ivie* analysis.[13] See *Ivie,* 606 P.2d at 1203; *id.* at 1203–04 (Stewart, J., concurring); *see also id.* at 1205 (Hall, J., dissenting) ("I have no particular apprehension as to the application of the new rule of law to *future* cases since its practical, dollars and cents effect would appear to be *no different* than if the doctrine of subrogation were adhered to." (second emphasis added)).

---

11. *Ivie* has been cited in other cases as well, mostly for its general discussion of subrogation. See *State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co.,* 912 P.2d 983, 985 (Utah 1996); *Educators Mut. Ins. Assoc. v. Allied Property & Cas. Ins. Co.,* 890 P.2d 1029, 1030 (Utah 1995); *Wasatch Bank of Pleasant Grove v. Surety Ins. Co. of Cal.,* 703 P.2d 298, 299 (Utah 1985); *Guaranty Nat'l Ins. Co. v. Morris,* 611 P.2d 725, 727 (Utah 1980) (noting a factual difference with *Ivie*).

12. On a practical note, the *Ivie* decision, and our reaffirmation thereof in this case, requires a tortfeasor's liability insurer to understand that, despite a settlement with the tort victim, it remains potentially liable to the PIP insurer for PIP bene-

fits. This liability is to be determined in mandatory arbitration. See Utah Code Ann. § 31–41–11(1)(b) (1974). The liability insurer can either " 'short' ... settlement ... by a sum adequate to cover its reimbursement obligation" to the PIP insurer, *Ivie,* 606 P.2d at 1205 (Hall, J., dissenting), or make an "arm's length" settlement in which "the parties [have] a clear understanding that a portion of the settlement [is] reimbursement to the PIP insurer." *Christensen,* 669 P.2d at 1238.

13. Under the facts in *Ivie,* it appeared that there might be a double recovery. But that inequity could have been remedied by an equitable claim for unjust enrichment.

¶ 19 Second, Bear River argues that the Walls' settlement with Waters and her insurer deprives it of its right to recover, in arbitration with Waters' insurer, the PIP benefits it paid to Wall. In making this argument, Bear River basically restates its argument that *Ivie* did not overrule *Jones*. As previously stated, the *Ivie* analysis directly conflicts with *Jones* and implicitly overruled it. Further, the Walls' settlement with Waters and her insurer did not affect Bear River's statutory right to reimbursement. *Ivie* precisely held that *despite* a settlement between the tort victim and the tortfeasor/liability insurer, the PIP insurer *could* statutorily seek reimbursement from the liability insurer in arbitration. *See Ivie*, 606 P.2d at 1203; *Brundage*, 674 P.2d at 102; *Laub*, 657 P.2d at 1305–06. It is true that the tort victim/tortfeasor/liability insurer settlement *may* affect the PIP insurer's reimbursement right. *See Jaramillo*, 669 P.2d at 1232–33; *Christensen*, 669 P.2d at 1238–39. However, as we stated in *Christensen*, such a settlement must be "bargained for at arm's length and accepted by the parties with a *clear understanding* that a portion of the settlement was reimbursement to the PIP insurer." *Id.* at 1238 (emphasis added). Absent this clear understanding, a settlement between a tort victim, a tortfeasor, and a liability insurer simply does not affect a PIP insurer's statutory right to seek reimbursement from a liability insurer.

¶ 20 No clear understanding was present in the settlement here. The parties to the settlement were specifically identified and did not include Bear River. In the release, the Walls, referred to as "Claimants," agreed to release Waters and Waters'

> agents and servants and all other persons, firms, and corporations whomsoever of and from any and all actions, claims, and demands whatsoever which *Claimants* now have or may have, whether known or unknown, developed or undeveloped, on account of arising out of the accident, casualty or event which happened on or about the 7th day of August, 1992.

(Emphasis added.) Nowhere in the release is Bear River mentioned with the *clear understanding* that the release canceled its statutory right to reimbursement in arbitration with Waters' insurer. The Walls' release here did not affect Bear River's statutory reimbursement right.

¶ 21 In sum, *Ivie* overruled *Jones*'s application of subrogation to PIP payments under section 31–41–11.[14] Affirmed.

¶ 22 Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Justice STEWART's opinion.

¶ 23 Chief Justice HOWE concurs in the result.

---

**14.** As the Court of Appeals stated, *Jones* has been cited for propositions other than that which *Ivie* overruled. *See supra* note 11; *Bear River*, 937 P.2d at 1288 n. 10. These propositions remain unchanged by today's decision to the extent other cases have not overruled or limited them.