**BEAR RIVER MUTUAL INSURANCE COMPANY, a Utah corporation, Plaintiff and Appellant,**

v.

**John WALL and Nancy Wall, his wife, Defendants and Appellees.**

No. 960362–CA.

Court of Appeals of Utah.

May 1, 1997.

Thomas A. Duffin and Daniel O. Duffin, Salt Lake City, for Plaintiff and Appellant.

John Wall and Nancy Wall, North Salt Lake, Defendants and Appellees pro se.

Before BENCH, JACKSON and ORME, JJ.

JACKSON, Judge:

Bear River Mutual Insurance Company (Bear River) appeals the district court's order granting summary judgment in favor of John and Nancy Wall. The district court ordered Bear River to continue to pay personal injury protection (PIP) benefits to its no-fault insureds, the Walls, despite the insureds' settlement with and release of the third-party tortfeasor and the tortfeasor's insurer. We affirm.

## FACTS

The material facts in this case are undisputed. In August 1992, Nancy Wall was in an automobile accident in Colorado. Pursuant to its insurance policy with the Walls, Bear River began to pay the Walls PIP benefits for Nancy Wall's medical expenses.

Because Nancy Wall's damages exceeded the statutory threshold limitations controlling tort actions against tortfeasors, *see* Utah Code Ann. § 31A–22–309(1) (1994), the Walls sought recovery from the tortfeasor. On March 4, 1994, the Walls entered into a settlement with the tortfeasor and the tort-

feasor's insurer, receiving $16,000 in return for releasing the tortfeasor from "any and all actions, claims and demands whatsoever which claimants now have or may have, whether known or unknown, developed or undeveloped, on account of or arising out of the accident ... which happened on or about the 7th day of August, 1992." The tortfeasor's insurer then issued a single check in the amount of $16,000 to the Walls through their attorney.

Upon learning of the settlement and release, Bear River refused to make further PIP payments to the Walls. Bear River then brought this action for a declaratory judgment in district court. Bear River asked the district court to determine whether, under Utah's no-fault statute and under its insurance policy with the Walls, it had to pay further PIP benefits to the Walls after the Walls settled with and released the tortfeasor.[1] Both parties moved for summary judgment on the issue.

The district court granted the Walls' motion for summary judgment, concluding that Bear River was required to pay further PIP benefits to the Walls under the terms of its policy with the Walls. Bear River appeals.

## ANALYSIS

A grant of summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "Since the facts are undisputed here, we examine only issues of law. We review the [district] court's conclusions of law for correctness, granting them no deference." *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996).

Bear River asserts the district court erred in concluding that the release signed by the Walls did not discharge Bear River from its obligation to continue to pay PIP benefits to

the Walls under its policy and under Utah's no-fault statute. Bear River also asserts the district court erred in determining that the Walls' release did not extinguish Bear River's statutory right to seek reimbursement in arbitration proceedings for any PIP benefits paid after the Walls settled with the tortfeasor.

In arguing that it is not obligated to make further PIP payments following its insureds' settlement, Bear River relies on *Jones v. Transamerica Insurance Co.*, 592 P.2d 609 (Utah 1979). In *Jones*, the Utah Supreme Court held that a no-fault insured was precluded, based on subrogation principles, from asserting a claim against his no-fault insurer for further PIP payments after the insured settled with the tortfeasor. *See id.* at 612. Bear River also relies on language from a number of Utah cases, including *Jones*, stating that a primary purpose of Utah's no-fault statute is to prevent double recovery. *See id.* at 611. Bear River argues that requiring it to continue to make PIP payments, despite the Walls' settlement and release, would result in a double recovery by the Walls, in contravention of this purpose of the no-fault statute.[2]

The Walls, on the other hand, argue that the holding in *Jones* is not dispositive in this case. Instead, the Walls rely on the supreme court's analysis and holding in *Allstate Insurance Co. v. Ivie*, 606 P.2d 1197 (Utah 1980), and subsequent cases. In *Ivie*, the court concluded that a no-fault insurer that has paid PIP benefits to its insured is not entitled, by way of subrogation, to reimbursement of those funds from a later recovery by its insured against a tortfeasor or the tortfeasor's insurer. *See id.* at 1202. Instead, the no-fault insurer must exercise its right under the no-fault statute to seek reimbursement through a binding arbitration proceeding between the insurance companies of the respective parties. *See id.* at 1203. The

---

1. Bear River is not seeking reimbursement for PIP benefits already paid to its insureds out of its insureds' recovery from the third-party tortfeasor.

2. In so arguing, Bear River apparently assumes that the parties to the settlement intended the settlement amount to cover all damages sustained, including those covered by PIP benefits.

However, the record does not show whether the $16,000 was regarded by the parties to the settlement as a comprehensive settlement for the entire range of damages sustained, or whether they regarded it as payment for those elements of damage *other than* what would be paid as PIP benefits.

Walls assert that under the supreme court's analysis in *Ivie*, PIP benefits are considered separate and distinct from tort claims. They argue that their settlement with the tortfeasor did not therefore include PIP benefits, and that requiring Bear River to continue to make PIP payments would thus not result in a double recovery.

We agree with the Walls that *Jones* is not dispositive of this case, as its holding and analysis are inconsistent with *Ivie* and subsequent Utah Supreme Court cases involving Utah's no-fault statute.

## I. Utah's No–Fault Automobile Insurance Statute

Utah law requires motor vehicle owners to maintain owner's or operator's security. *See* Utah Code Ann. § 41–12a–301(2) (Supp. 1996). Under Utah's no-fault statute, Utah Code Ann. §§ 31A–22–302, –305 to –309 (1994 & Supp.1996),[3] insurance policies "purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 ... shall ... include personal injury protection." *Id.* § 31A–22–302(2). Personal injury protection benefits include benefits for the reasonable value of medical expenses, not to exceed a total of $3000 per person; benefits for loss of income and household services; funeral or burial benefits; and death benefits. *See id.* § 31A22–307.

In addition to the provisions requiring that automobile insurance policies provide minimum PIP benefits, Utah's no-fault statute places restrictions on tort actions for personal injuries alleged to have been caused by an automobile accident. Section 31A–22–309 provides that a person covered by PIP bene-fits cannot maintain an "action for general damages arising out of personal injuries" unless certain threshold requirements are met.[4] *Id.* § 31A–22–309(1). Thus, the statute preserves tort actions in only the more serious cases, including those in which there is death, permanent disability, or medical expenses incurred over $3000. *See id.*

The no-fault statute further states that

[e]very policy providing personal injury protection coverage is subject to the following:

(a) that where the insured under the policy is or would be held legally liable for the personal injuries sustained by any person to whom benefits required under personal injury protection have been paid by another insurer ... the insurer of the person who would be held legally liable shall reimburse the other insurer for the payment, but not in excess of the amount of damages recoverable; and

(b) that the issue of liability for that reimbursement and its amount shall be decided by mandatory, binding arbitration between the insurers.

*Id.* § 31A–22–309(6).

## II. *Jones v. Transamerica Insurance Co.*

Bear River asserts that the supreme court's holding in *Jones v. Transamerica Insurance Co.*, 592 P.2d 609 (Utah 1979), interpreting Utah's no-fault statute, is dispositive of the issue in this case. In *Jones*, the plaintiff insured was involved in an automobile accident, and thereafter was paid PIP benefits by his no-fault insurer for medical expenses and lost wages. About eighteen

---

**3.** Utah's no-fault statute was first enacted in 1974, *see* Utah Automobile No–Fault Insurance Act, ch. 55, 1973 Utah Laws 141 (effective Jan. 1, 1974), and codified at Utah Code Ann. §§ 31–41–1 to –13 (1974). These sections of the Utah Code were repealed in 1985 and replaced by Title 31A. Although the current version of the no-fault statute has amended portions of the original No–Fault Insurance Act, supreme court cases following the statute's reenactment have not interpreted the current provisions of the statute at issue differently from the former provisions. *See, e.g., Versluis v. Guaranty Nat'l Cos.*, 842 P.2d 865, 866–67 (Utah 1992). In addition, the parties in this case have not argued that any modifications in the language of the new version have changed the fundamental principles underlying the no-fault statute. Therefore, we treat cases interpreting the former version of the No–Fault Insurance Act as applying equally to the current version of the no-fault statute.

**4.** The no-fault statute does not define "general damages." However, the supreme court has defined "general damages" as " 'all damages other than those awarded for economic losses.' " *Allstate Ins. Co. v. Ivie*, 606 P.2d 1197, 1200 (Utah 1980) (quoting Robert E. Keeton, *Compensation Systems & Utah's No–Fault Statute*, 1973 Utah L.Rev. 383, 392).

months after receiving these PIP benefits, the insured submitted additional claims for PIP benefits for lost earnings and inability to perform household services. *See id.* at 610. At the same time as the insured submitted the additional PIP claims to his no-fault insurer, the insured entered into a settlement agreement with his tortfeasors, releasing "his tortfeasors of any and all claims he may have had against them for personal injury [and] property damage" for the consideration of $6000. *Id.* (emphasis omitted).

Because his no-fault insurer refused to pay further PIP benefits based on the later PIP claims, the insured brought an action against his no-fault insurer to recover for these claims. *See id.* The trial court held that the no-fault insured could not recover PIP benefits from his insurer once the insured settled his claim with his tortfeasor because an insured is not "entitled to both recovery under the No–Fault Act and a suit against and recovery from the tort feasor." *Id.* at 611.

On appeal, the plaintiff argued that the release did not bar him from pursuing a claim against his no-fault insurer because "the specific exclusion in the release agreement preserved any no-fault claims which may be made against the tortfeasors," and because "the recovery from the tortfeasors is not the same as the disability sought from the insurance carrier." *Id.* at 612. The Utah Supreme Court rejected these arguments and affirmed the trial court's holding, specifically concluding that "[b]y executing the release, plaintiff discharged the tortfeasors of any and all liability, notwithstanding the attempted 'specific exclusion' [in the release agreement] relating to no-fault benefits. By so doing, plaintiff has chosen his recovery and cannot now successfully assert a claim against his insurer." *Id.*

In concluding that the plaintiff could not maintain a claim against his no-fault insurer for the additional PIP benefits, the court primarily relied on principles of subrogation. The court discussed the structure of the no-fault statute, stating that the statute "eliminate[s] claims for injuries of lesser consequence which fail to meet a basic 'threshold' test set forth in the statute and provides for the payment of benefits by one's own insurer

without regard to fault." *Id.* at 611. The court continued by stating:

> No-fault benefits are also available to those who sustain greater injuries. This is so even though they remain free to pursue a tort claim as well. However, this does not entitle one to a double recovery for a single loss *since the statute specifically affords subrogation rights* and arbitration *between insurers whenever no-fault benefits are paid.*

*Id.* (emphasis added) (footnotes omitted).

The court further stated that in this case, by settling with the tortfeasor, the insured had "cut off [his no-fault insurer's] subrogation rights as provided by statute," and therefore had "chosen his remedy" and was not entitled to receive further PIP benefits from his no-fault insurer. *Id.* at 611. As the court explained:

> Plaintiff accepted the $6,000.00 from his tortfeasors as additional recovery in lieu of any further insurance benefits to which he might have been entitled. This agreement expressly releases plaintiff's claim against the tortfeasors for known and unknown personal injuries.... [D]efendant insurer is subrogated to the rights of plaintiff in asserting a claim against the tortfeasors' insurers in recovering benefits based upon liability. The rights to which the subrogee succeeds can be no greater than those of the person for whom he is substituted.

*Id.* at 612.

In addition to relying on principles of subrogation, the court's statements and holding also rested on an assumption that the plaintiff's settlement with the tortfeasor included compensation for PIP-covered losses. Under this assumption, if the plaintiff were to receive further PIP benefits from his no-fault insurer, he would receive a double recovery. Thus, the court indicated that its conclusion that the insured could not recover further PIP benefits from his no-fault insurer after settling with the tortfeasor was necessary to avoid double recovery by the no-fault insured. The court stated:

> The whole tenor of the [No–Fault] Act is that an injured person will not be permitted to recover from an insurance carrier

(over and above what the carrier has *previously* paid in benefits) once he has successfully recovered from his tortfeasor for *personal injuries.* Any other interpretation would be to permit double damage recovery.

*Id.*

### III. *Allstate Insurance Co. v. Ivie*

In *Allstate Insurance Co. v. Ivie,* 606 P.2d 1197 (Utah 1980), decided the following year, the Utah Supreme Court rejected much of the analysis of *Jones,* although it declined to expressly overrule *Jones.*[5] In *Ivie,* the defendant insured received $7,394 in PIP benefits from her no-fault insurer, Allstate, following an automobile accident. She then filed an action for damages against the tortfeasor. She settled with the tortfeasor's insurer, Travelers Insurance Company, for $44,000, and Travelers paid the settlement sum in two drafts: one draft was made payable jointly to Allstate and Ivie for $7,394, and the other was made payable to Ivie for the balance of the $44,000 settlement. Ivie refused to deliver the first check to Allstate. Allstate then brought suit against Ivie, arguing that it was entitled to subrogation under its policy to the extent of the PIP benefits paid by Allstate, or, alternatively, that it was

entitled to reimbursement for the PIP benefits under Utah's no-fault statute. *See id.* at 1198. The trial court granted Allstate's motion for summary judgment; the Utah Supreme Court reversed. *See id.* at 1199, 1203.

In discussing the no-fault statute, the supreme court noted that a tortfeasor who has complied with the security provisions of the statute is not personally liable for the PIP benefits,[6] although the tortfeasor "does … remain liable for customary tort claims, viz., general damages and economic losses not compensated by [PIP benefits], where the threshold provisions of [the no-fault statute] are met." *Id.* at 1200. Therefore, the court stated that when the injured party is entitled under the no-fault statute to maintain a claim against the tortfeasor for personal injuries (i.e., when the injured party has met the threshold requirements of the statute), the injured party should not plead for damages which are covered by PIP benefits, but "should plead only for those damages for which he has not received reparation under his first party insurance benefits." *Id.*

The court further concluded that the no-fault statute does not confer "subrogation rights on the no-fault insurer, vis-a-vis its insured as to [the insured's] recovery in a settlement or legal action."[7] *Id.* at 1202.

---

5. The majority opinion in *Ivie* did not explicitly refer to *Jones v. Transamerica Insurance Co.,* 592 P.2d 609 (1979). However, Justice Hall, the author of *Jones,* wrote in a dissent in *Ivie* that the majority, in "depart[ing] from long-established principles of subrogation," "ignores the recent unanimous ruling of this Court in *Jones v. Transamerica Insurance Co.,* wherein we specifically recognized that the Act preserved subrogation rights between insurers whenever no-fault benefits are paid." *Ivie,* 606 P.2d at 1205–06 (footnotes omitted) (Hall, J., dissenting).

6. In determining that the tortfeasor who has complied with the security provisions of the no-fault statute is not personally liable for PIP benefits, the court relied on Utah Code Ann. § 31–41–9(2) (1974) (repealed 1985), which provided:

> The owner of a motor vehicle with respect to which security is required by this act who fails to have such security in effect at the time of an accident shall have no immunity from tort liability and shall be personally liable for the payment of the [PIP] benefits provided for under section 31–41–6.

The current version of this provision, found in section 41–12a–304, is substantially identical, stating:

> The owner of a motor vehicle on which owner's or operator's security is required under Section 41–12a–301 who fails to have the security in effect at the time of an accident does not have immunity from tort liability under Subsection 31A–22–309(1). This owner is personally liable for the payment of the benefits provided for under Section 31A–22–307 to persons entitled to receive them under Section 31A–22–308.

*Id.* § 41–12a–304 (1993).

7. The court distinguished Utah's no-fault statute from similar legislation in other states which retain subrogation rights. The court explained that under some of these latter statutes, which "are not regarded as true 'no-fault' legislation," "[a]ll tort claims are preserved … for subrogation or offset to avoid double recovery for an item of loss." *Ivie,* 606 P.2d at 1199. The court continued by stating that "[t]he Utah no-fault statute[, by comparison,] is a compulsory, partial tort exemption law coupling no-fault insurance benefits … with a partial elimination of tort claims for bodily injury." *Id.*

Thus, the no-fault insurer has no right, based on subrogation, to settlement funds received by its insured in a subsequent personal injury action against the tortfeasor. Instead, under the no-fault statute, the PIP insurer must seek reimbursement for PIP payments in a binding arbitration proceeding between the insurance companies of the respective parties. *See id.* at 1203. The supreme court therefore held that Ivie's recovery from Travelers could not be reduced by the PIP benefits paid by Allstate. However, the court reaffirmed that "Allstate is not precluded from claiming reimbursement from Travelers in an arbitration proceeding." *Id.*

In addition to rejecting the subrogation analysis of *Jones,* the court in *Ivie* differed from *Jones* in its view of the settlement between the injured person and the tortfeasor. In *Ivie,* unlike in *Jones,* the court viewed the settlement sum negotiated by the no-fault insured and the tortfeasor or tortfeasor's insurer as *excluding* compensation for injuries covered by PIP benefits. *See Guaranty Nat'l Ins. Co. v. Morris,* 611 P.2d 725, 727 (Utah 1980) ("The gist of the [*Ivie*]

decision was that the PIP payment would not be considered as part of any settlement between the injured party and the third-party tortfeasor or his insurer."); *see also Allstate Ins. Co. v. Anderson,* 608 P.2d 235, 236 (Utah 1980) (Crockett, C.J., concurring).[8] This is because the tortfeasor (and thus the tortfeasor's insurer) has no liability for PIP benefits. This assumption of the *Ivie* court also changed its analysis of whether there is double recovery by the insured. The court in *Ivie* did not reject the language of *Jones* which set forth the general principle of no double recovery;[9] however, under the *Ivie* court's assumption that the settlement does not include PIP benefits, refusing to allow the no-fault insurer to obtain reimbursement for PIP benefits from the no-fault insured's recovery from the tortfeasor would not result in double recovery by the insured.

### IV. Post-*Ivie* Analysis Under Utah's No–Fault Statute

 Cases following *Ivie* have reaffirmed its holding and basic principles.[10] In these

---

**8.** In *Allstate Insurance Co. v. Anderson,* 608 P.2d 235 (Utah 1980), Chief Justice Crockett, in a concurrence, distinguished between two classes of claims: first, PIP benefits, "which are paid to the claimant ... by [the claimant's] own insurer, regardless of fault," and second, "the possible tort claim against the alleged wrongdoer, backed up by [the wrongdoer's] insurer." *Id.* at 236 (Crockett, C.J., concurring). He further stated:

If it appears that the wrongdoer 'is or would be legally liable' to the claimant, then the wrongdoer's insurer must reimburse the claimant's insurer for its PIP payments it has made, this to be done under the procedure provided in [the Act]; and this PIP payment is not to be considered as part of any settlement between the claimant and the wrongdoer or his insurer. (Unless the parties clearly understand and agree otherwise.)

*Id.* (Crockett, C.J., concurring).

**9.** The supreme court has reaffirmed this principle in cases following *Ivie.* *See, e.g., Christensen v. Farmers Ins. Exch.,* 669 P.2d 1236, 1239 (Utah 1983) ("A number of recent cases [including *Ivie*] have discussed the relative rights of an injured party, his no-fault insurer and the tortfeasor's insurer. All of these cases are based on the proposition that 'a basic principle of the No–Fault Act is to prevent double recovery by the no-fault insured.'" (quoting *Dupuis v. Nielson,* 624 P.2d 685, 686 (Utah 1981))).

**10.** The dissent asserts that cases issued by the supreme court after *Ivie* cite to *Jones* as good

law, citing *Wilde v. Mid–Century Insurance Co.,* 635 P.2d 417, 419 (Utah 1981), *Dupuis v. Nielson,* 624 P.2d 685, 686 (Utah 1981), and *Osuala v. Aetna Life & Casualty,* 608 P.2d 242, 243 (Utah 1980). However, these cases do not specifically address whether the portion of the *Jones* opinion which held, based on subrogation principles, that a no-fault insured may not bring an action for PIP benefits against the no-fault insurer after accepting a recovery from the tortfeasor remained good law following *Ivie.*

In *Osuala,* the supreme court cited *Jones* for the general proposition that "[a]n important aspect of the [No–Fault] Act is the requirement that the PIP protections for an injured motorist are to be paid by his own insurer." 608 P.2d at 243. Similarly, in *Dupuis,* the supreme court referred generally to *Jones, Ivie,* and a third case as being "cases ... predicated upon the proposition that a basic principle of the No–Fault Act is to prevent double recovery by the no-fault insured." 624 P.2d at 686.

In *Wilde,* the supreme court declined to find *Jones* dispositive on the issue of whether the no-fault insured plaintiffs were entitled to recover additional no-fault insurance benefits after having obtained a judgment against the tortfeasor. *See* 635 P.2d at 419. The court rejected the defendant's argument that *Jones* was controlling, and distinguished *Jones* on the basis that the "[p]laintiffs here did not give up all additional insurance benefits as a result of the judgment against the tortfeasor, as was the case in *Jones.*"

cases, the supreme court has confirmed that the no-fault insurer has no right to subrogation under Utah's no-fault statute, and that as a general rule a no-fault insurer may not seek reimbursement for PIP payments from its insured's subsequent recovery from the tortfeasor. *See, e.g., Allstate Ins. Co. v. Anderson*, 608 P.2d 235, 236. (Utah 1980). However, the supreme court has allowed no-fault insurers to obtain reimbursement for PIP payments directly from their insureds' settlement with tortfeasors in certain circumstances where it was clear the parties to the settlement intended that the settlement amount include PIP reimbursement.

For example, in *Jaramillo v. Farmers Insurance Group*, 669 P.2d 1231 (Utah 1983), the supreme court refused to find that the plaintiff insured was entitled to the full settlement amount where a portion of the amount had been intended as PIP reimbursement. *See id.* at 1233–34. In *Jaramillo*, the plaintiff insured received $2694.13 in PIP benefits from his no-fault insurer, Farmers Insurance. The plaintiff then brought a personal injury action against the tortfeasor, which was settled with the tortfeasor's insurer, State Farm. It was stipulated that the plaintiff was aware that "it was State Farm's intention to compromise the [tortfeasor's] liability to both plaintiff and Farmers by payment of the sum of $12,000," which was to be disbursed in two portions: $2694.13 to Farmers as reimbursement for its payment of PIP benefits, and the balance to plaintiff in full settlement of his claims. *Id.* at 1232. State Farm issued two drafts: one in the amount of $2694.13, payable jointly to plaintiff and Farmers, and the other for the balance, payable to plaintiff and his attorney. The plaintiff requested Farmers to endorse the $2694 check to him. Farmers refused to do so, and

the plaintiff brought an action against Farmers, "seeking to recover the amount of the check." *Id.* at 1232–33.

In arguing that Farmers was not entitled to the $2694 check, the plaintiff relied on *Ivie*, asserting that the holding in *Ivie* "preclude[d] any deductions of no-fault benefits from the overall settlement figure." *Id.* at 1233. The Utah Supreme Court rejected this argument, holding that the plaintiff was not entitled to the $2694 check. *See id.* In so holding, the Utah Supreme Court distinguished *Ivie*. The court stated that in *Ivie*,

the tort victim reached a settlement with the liability insurer, but did so *without any understanding or agreement that the settlement figure included funds to be used for the reimbursement of the no-fault insurer*, whereas in the instant case, plaintiff admittedly understood that the $12,000 settlement figure included funds intended for the reimbursement of no-fault benefits paid by Farmers.

*Id.* (emphasis added). Thus, in light of the understanding between the plaintiff and State Farm that the settlement amount included PIP reimbursement, the court refused to hold that the plaintiff was entitled to receive the $2694 check from State Farm. *See id.*

Similarly, in *Christensen v. Farmers Insurance Exchange*, 669 P.2d 1236 (Utah 1983), the supreme court refused to allow the plaintiff insured to retain a portion of settlement funds from the tortfeasor's insurer which was intended as reimbursement for prior PIP benefits paid by the insured's no-fault insurer. *See id.* at 1239. In *Christensen*, the plaintiff received PIP benefits in the amount of $17,194.95 from his no-fault insurer, Farmers Insurance, and then

---

*Id.* In discussing *Jones*, the court also suggested that the reasoning of *Jones* was inconsistent with *Ivie*. *See id.* ("A central concern [in *Jones* ] was that the no-fault carrier's right to subrogation was terminated by the settlement agreement. But compare *Allstate Insurance Company v. Ivie*.").

The dissent in *Wilde* argued that *Jones* "should be dispositive of this case," but, because the majority disagreed, the majority "should reverse itself on *Jones v. Transamerica*." *Id.* at 421, 425 (Henriod, J., dissenting). The dissent stated that the issue in the case was

whether a *release* of the tortfeasor of *all* claims is dispositive in barring recovery from the no-fault insurer ... as was clearly answered affirmatively in *Jones*, but is *not* dispositive where all claims against the tortfeasor have been resolved and *satisfied* by a *judgment* of a court of competent jurisdiction. If the judgment has the same dignity as a "release," the *Jones* case is dispositive here. If it does *not* have the same or greater dignity, this Court has no course to pursue, but to reverse *Jones v. Transamerica* in its entirety.

*Id.* at 424 (Henriod, J., dissenting).

sought recovery from the tortfeasor and the tortfeasor's liability insurer, State Farm. The plaintiff and State Farm reached a settlement of $70,000. State Farm tendered three checks to satisfy this settlement, one of which was payable jointly to plaintiff, his attorney, and Farmers Insurance for $17,-194.95. Upon receiving the checks, the plaintiff signed a general release, and "also signed a settlement summary which itemized the three checks ... and reflected the fact that the [$17,194.95] check was intended to be reimbursement for PIP payments."[11] *Id.* at 1238.

After *Ivie* was decided, the plaintiff attempted to retain the $17,194.95 check. The Utah Supreme Court rejected the plaintiff's claim to the check. As in *Jaramillo*, the court noted that in *Ivie* the no-fault insured had reached a settlement with the liability insurer without any understanding that the settlement figure included PIP reimbursement. *See id.* The court then stated:

> There is nothing in the *Ivie* holding which mandates that a settlement agreement, bargained for at arm's length and accepted by the parties *with a clear understanding that a portion of the settlement was reimbursement to the PIP insurer*, be reconstrued by the courts to alter the terms of the settlement and to give a windfall to the insured party.

*Id.* at 1238–39 (emphasis added). The court therefore concluded that

> [w]here, as here, the no-fault insured had received PIP payments, allowing him to lay claim to *funds that admittedly had been intended both by plaintiff and by the liability insurer to be reimbursement to plaintiff's no-fault insurer for those payments* would clearly constitute double recovery, which this Court will not sanction.

*Id.* at 1239 (emphasis added); *see also id.* at 1238 (stating that plaintiff "bargained for and received a settlement *which he accepted* with full knowledge that PIP payments were included in it"); *Pett v. Equitable Ins. Co.*, 714 P.2d 652, 653 (Utah 1986).[12]

■ On the other hand, the supreme court has indicated that where there is no clear indication that the parties to a settlement intended that a portion of the settlement amount be used to reimburse the no-fault insurer for PIP benefits paid, the no-fault insured may not recover for the PIP payments directly from the insured's settlement with the tortfeasor. *See, e.g., Anderson,* 608 P.2d at 236; *see also Laub v. South Cent. Utah Tel. Ass'n,* 657 P.2d 1304, 1307 (Utah 1982).[13] In such a case, the settlement is presumed to exclude PIP reimbursement; thus, requiring the no-fault insurer to seek reimbursement directly from the tortfeasor's insurer, rather than from the no-fault insured's recovery from the tortfeasor, does

---

**11.** The plaintiff also testified at trial that "he understood at the time of the settlement that he was not to receive any of the proceeds of the third draft [for $17,194.95]." *Christensen,* 669 P.2d at 1238.

**12.** In *Pett v. Equitable Insurance Co.,* 714 P.2d 652 (Utah 1986), the no-fault insured entered into a settlement with the tortfeasor's insurer, and signed a release agreement stating: " 'The undersigned hereby acknowledges receipt of the sum of $175,000.00 less $[10,800] paid directly to Equitable Insurance Company in satisfaction of its no-fault payments claim.' " *Id.* at 653. The tortfeasor's insurer issued two checks and the no-fault insured received $164,200. The insured then brought an action to recover $10,800 from its no-fault insurer, arguing, in part, that under *Ivie,* "Equitable could not take any part of the amount recovered by its insured, but could only obtain reimbursement from the liability insurer through arbitration." *Id.* The supreme court rejected this argument, finding that "[t]he plain meaning of the language of the settlement

agreement ... is that the amount of appellant's recovery was $164,200, not $175,000," and that the agreement "shows that he never acquired any interest in the amount specified for reimbursement to Equitable." *Id.*

**13.** In *Laub v. South Cent. Utah Tel. Ass'n,* 657 P.2d 1304 (Utah 1982), a non-settlement case, the supreme court stated that the holding in *Ivie* was

> that a tortfeasor is not personally liable to the injured insured for special damages previously compensated by PIP benefits from the no-fault insurer, and that the injured party should therefore not be allowed even to plead for those damages. However, if a plaintiff does improperly plead for previously compensated damages and they are allowed to be included in the judgment, the court should ... reduce the judgment by the amount of those previously compensated damages, and thereby prevent double recovery.

*Id.* at 1307.

not result in double recovery by the no-fault insured.

■ In light of the above discussion, we conclude that, because the supreme court rejected the analysis underlying *Jones* in *Ivie,* and has reaffirmed the *Ivie* analysis in subsequent cases, the holding and underlying subrogation principles of *Jones* have been overruled sub silentio by *Ivie* and later supreme court cases. Thus, the holding of *Jones* is not dispositive in this case, and we proceed by applying the analysis of *Ivie* and later supreme court cases in determining whether, in this case, Bear River's obligation to pay PIP benefits was discharged by the Walls' settlement with and release of the tortfeasor.

Under the *Ivie* analysis, because the tortfeasor is not personally liable for PIP benefits, the settlement between the no-fault insured and the tortfeasor or tortfeasor's insurer is presumed to exclude PIP benefits in the absence of evidence of an agreement or understanding between the parties to the contrary. It follows that, if the settlement does not include PIP benefits, the no-fault insurer's obligation to pay full PIP benefits is not discharged by the insured's settlement. Further, because the settlement does not include PIP benefits, requiring the no-fault insured to continue to pay full PIP benefits in the absence of evidence that the settlement included PIP benefits, does not result in double recovery by the insured. Thus, the conclusion that the insured's settlement does not discharge the no-fault insurer's obligation to pay full PIP benefits does not run afoul of the purpose of the no-fault statute to prevent double recovery.

In this case, our review of the record reveals no evidence showing the parties to the settlement and release understood or intended that the total settlement amount would include PIP benefits. Based on the presumption arising from *Ivie* that, because the tortfeasor who has complied with the security requirements of Utah law is not personally liable for PIP benefits, a settlement between the no-fault insured and the tortfeasor does not include PIP benefits absent clear evidence to the contrary, we conclude that the Walls' settlement and release did not include PIP benefits. Thus, the Walls' settlement and release of the tortfeasor did not discharge Bear River from its obligation to pay full PIP benefits under Utah's no-fault statute.

■ In addition to its argument that the Walls' settlement discharged Bear River from its obligation to make further PIP payments under Utah's no-fault statute, Bear River also asserts that the Walls contractually waived or extinguished their right to future PIP benefits by executing the release. In so arguing, Bear River relies on language in its insurance policy with the Walls stating that the insured shall not be entitled to receive "duplicate benefits." [14]

■ However, as Bear River recognizes in its brief, the duty to pay PIP benefits to the insured is governed by Utah law. Utah's no-fault statute requires that insurance policies bought to satisfy the security requirements of Utah law contain provisions providing for minimum PIP benefits. *See* Utah Code Ann. § 31A–22–302(2) (1994). Therefore, an insurance policy may not limit the insured's right to receive minimum PIP benefits as provided by Utah law, as this would violate those provisions of the Utah no-fault statute. *See Farmers Ins. Exch. v. Call,* 712 P.2d 231, 233–36 (Utah 1985) (holding household or family exclusion clause in automobile insurance policy contravenes statutory requirements found in Utah's no-fault statute as to minimum benefits which must be provided to all persons sustaining personal injuries); *Larsen v. Allstate Ins. Co.,* 857 P.2d 263, 265 n. 2 (Utah.Ct.App.1993) (stating insurer's argument that this court should rely on policy language in determining when PIP coverage for lost earnings would begin "plainly fails" because "section 31A–22–307 mandates the

---

14. Bear River relies on the following provision of its policy with the Walls:

 *Non-Duplication of Benefits, Limits of Liability and Conditions of Other Insurance Under our Personal Injury Protection*

1. No eligible injured person shall recover or receive duplicate benefits for the same elements of loss under this or any similar insurance.

minimum coverage that an insurance company must provide"). Thus, to the extent that Bear River seeks to avoid payment of the minimum PIP benefits which are statutorily required to be provided to all persons sustaining personal injuries, Bear River's argument based on its policy language must fail.

Moreover, even if Bear River's policy provision for PIP payments controlled over Utah statute, our determination, based on the presumption of *Ivie*, that the settlement did not include PIP benefits disposes of Bear River's claim that the policy language prohibiting double recovery released it from further PIP payments. Because Bear River has not shown that the Walls' settlement included payment for injuries covered by PIP benefits, the Walls will not receive a "double recovery" under the policy if Bear River continues to make PIP payments. Thus, under the policy's language, Bear River is not released from further payments.

■ Bear River finally asserts that, as a result of the settlement and release, Bear River can no longer seek reimbursement from the tortfeasor's insurer through arbitration for any additional PIP payments made to the Walls. Bear River is presumably suggesting that if it is unable to seek reimbursement for further PIP payments, it should not be required to make further PIP payments. In making this assertion that its arbitration rights have been extinguished, Bear River basically argues that if the tortfeasor's insurer is released by the no-fault insured from any liability for personal injuries, there can be no arbitration award under the statute because there is no liability. However, section 31A–22–309(6) of the Utah Code contains no such limitation on the no-fault insurer's ability to seek reimbursement. Further, Bear River's argument is essentially the argument advanced in *Jones*, that by executing a release, the no-fault insured discharged the tortfeasors of all liability, and in so doing also extinguished the no-fault insurer's right to recover from the tortfeasor insurer. This argument was rejected in *Ivie* and later cases. We thus conclude that Bear River's right to seek reimbursement for PIP payments through binding arbitration pursuant to § 31A–22–309(6) (1994) was not extinguished by the settlement and release.

## CONCLUSION

The district court properly granted the Walls' motion for summary judgment. Bear River's obligation to continue to pay full PIP benefits was not extinguished by the settlement and release between the Walls and the tortfeasor because there was no evidence that the parties to the settlement and release understood or intended that the settlement sum include PIP benefits. In addition, the release did not extinguish Bear River's right, under Utah's no-fault statute, to seek reimbursement for further PIP payments from the tortfeasor's insurer through binding arbitration. Thus, the Walls were entitled to judgment as a matter of law. Accordingly, we affirm.

ORME, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. I am not convinced that *Allstate Insurance Co. v. Ivie*, 606 P.2d 1197 (Utah 1980), or any other case, has overruled *Jones v. Transamerica Insurance Co.*, 592 P.2d 609 (Utah 1979).

I believe the holdings in *Jones* and *Ivie* are reconcilable and are both good law. As the majority opinion correctly points out, *Jones* held that the PIP provider is not obligated to pay PIP benefits after its insured settles with the tortfeasor for personal injury and property damage and releases the tortfeasor from all further liability. *See Jones*, 592 P.2d at 612. *Ivie* held that a PIP insurer had no right to subrogation out of its insured's settlement with the tortfeasor's insurance company, but instead the PIP insurer had to look to the tortfeasor's insurance company for reimbursement through arbitration. *See Ivie*, 606 P.2d at 1203.

*Ivie* does not change the holding in *Jones* that the PIP insurer is not obligated to pay further benefits to its insured after settlement. To support its theory that *Ivie* overruled *Jones*, the majority cites to Justice Hall's dissent in *Ivie* in which he argues that the *Ivie* majority ignored *Jones*. However, Justice Hall's dissent was directed solely at

who should reimburse the PIP insurer under "long-established principles of subrogation." *Ivie*, 606 P.2d at 1204–05 (Hall, J., dissenting). Payment of PIP benefits by the PIP insurer after its insured settles was not even at issue in *Ivie*. In *Ivie*, the PIP insurer was seeking reimbursement only for costs incurred prior to settlement. *See Ivie*, 606 P.2d at 1198. Given the different factual situations and holdings of *Jones* and *Ivie*, I cannot read *Ivie* as overruling *Jones* sub silentio. *See Carrier v. Pro–Tech Restoration*, 909 P.2d 271, 276 (Utah.Ct.App.1995) (expressing unwillingness to read case to overrule another sub silentio because "the two situations are so different"); *see also* Tracy R. Barrus, Comment, Allstate Insurance Co. v. Ivie: *Reimbursement Between Insurers Under Utah's No–Fault Act*, 1981 Utah L.Rev. 379, 386 ("Technically, the cases are not in direct conflict because *Jones* applies only if the settlement occurs before payment of PIP benefits while *Ivie* covers the opposite situation."). Cases issued by the supreme court after *Ivie* all cite to *Jones* as good law. *See, e.g., Wilde v. Mid–Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981); *Dupuis v. Nielson*, 624 P.2d 685, 686 (Utah 1981); *Osuala v. Aetna Life & Cas.*, 608 P.2d 242, 243 (Utah 1980).

Furthermore, the supreme court is appropriately cautious about overruling recently decided cases. *See State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) (expressing that overruling prior precedent is not to be taken lightly). When it does overrule a case, the supreme court is typically very careful to articulate the reasons. *See id.* (stating that when departing from prior precedent, "it is incumbent on us to explain why we overrule it"). If in *Ivie* the supreme court had intended to overrule *Jones*, which had been decided less than a year earlier, it would have said so. Because it is possible to read the two cases to be in harmony with one another, this court should hold that the settlement cut off any future claims by the Walls for additional PIP benefits and that Bear River could look to the tortfeasor's insurer for reimbursement of PIP benefits paid prior to the settlement.

I would therefore reverse the summary judgment entered in favor of the Walls and direct the trial court to enter judgment for Bear River.